### BOULDIN v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. December 11, 1919.)

No. 3359.

1. INDICTMENT AND INFORMATION ⟨⟩61—STATE OF WAR WITHIN JUDICIAL KNOWLEDGE OF COURT AND ALLEGATION THEREOF UNNECESSARY.

In an indictment for an act made an offense if committed when the United States is at war, it is not necessary to allege that a state of war then existed; that being a fact of which the court may take judicial notice.

2. ARMY AND NAVY ⟨⟩40—VIOLATION OF ESPIONAGE ACT; QUESTIONS FOR JURY.

In a prosecution for attempting to cause insubordination, disloyalty, and mutiny in the army, the question whether defendant had knowledge of an article printed and circulated in a paper of which he was owner, editor, and manager *held* one for the jury.

In Error to the District Court of the United States for the Western Division of Texas; Duval West, Judge.

Criminal prosecution by the United States against G. W. Bouldin. Judgment of conviction, and defendant brings error. Affirmed.

J. F. Hair and Ed Haltom, both of San Antonio, Tex., for plaintiff in error.

Hugh R. Robertson, U. S. Atty., of San Antonio, Tex.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

FOSTER, District Judge. Plaintiff in error (hereafter called defendant) was charged with a violation of section 3 of the Act of June 15, 1917, known as the Espionage Act (40 Stat. 219, c. 30 [Comp. St. 1918, § 10212c]). The indictment substantially alleges that on November 24, 1917, at San Antonio, Tex., defendant did unlawfully and willfully attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military forces of the United States, by publishing on the front page of the "San Antonio Inquirer," a newspaper of which he was editor and manager, an article headed in black-faced type, "Sol-

diers of the 24th," referring to the 24th U. S. Infantry, a negro regiment, of which a number of its members were then on trial at San Antonio for mutiny. The article is set out in full in the indictment. We excerpt the following:

"Be brave; don't feel discouraged; rest assured that every woman in all this land of ours, who dares feel proud of the negro blood that courses through her veins, reveres you; she honors you.

"We would rather see you shot by the highest tribunal of the United States army, because you dared protect a negro woman from the insult of a Southern brute in the form of a policeman, than to have you forced to go to Europe to fight for a liberty you cannot enjoy.

"Negro women regret that you mutinied, and we are sorry you spilt innocent blood; but we are not sorry that five Southern policemen's bones now bleach in the graves of Houston, Texas.

"It is far better that you be shot for having tried to protect a negro woman than to have you die a natural death in the trenches of Europe, fighting to make a world safe for democracy that you can't enjoy. On your way to the training camps you are jim-crowed. Every insult that can be heaped upon you, you have to take, or be tried by court-martial if you resent it."

Defendant interposed a motion to quash the indictment on various grounds; the only one of which requires notice is that the indictment failed to allege that the United States was then at war. The motion to quash was overruled. The case went to trial, and at the close of the evidence defendant moved for a verdict of acquittal, which was denied. A verdict of guilty resulted, and a motion to arrest judgment was overruled.

[1] Eleven errors are assigned. The first seven run to the refusal to quash the indictment. The indictment follows the language of the statute, and it was not necessary to its validity that it should allege the United States was then at war, as that was a matter that could be taken notice of by the court and the jury. The motion to quash was properly overruled.

[2] The eighth assignment is to the overruling of the motion to direct a verdict of acquittal. There was evidence tending to show that the defendant was editor, manager, and owner of the paper, had personally mailed copies of the paper, that a copy of it was mailed to one of the members of the 24th Infantry then on trial, that it has a circulation of about 1,500 among the negroes in and around San Antonio, and copies of it were on file in barber shops kept by negroes and frequented by negroes of draft age. There was also evidence tending to show that the defendant had no personal knowledge of the article, was not the author of it, and did not know that it was published in his paper.

The question of defendant's knowledge and intent was for the jury. There can be no doubt that the article was well calculuated to create insubordination, disloyalty, and refusal of duty among the young negroes subject to draft. The jury was at liberty to conclude from the facts that defendant was the editor and manager of the paper and personally mailed out copies; that he had personal knowledge of the article and knowingly circulated it. It was not necessary for the prosecution to show that the defendant had in mind any particular unit of the United States army, or any particular person, when circulating the article.

The ninth assignment of error is to the refusal of the court to grant a new trial. This was purely a matter of discretion with the trial court, and no error can be assigned to its action thereon.

The tenth and eleventh assignments of error are to the judge's charge. The objection to the charge is not to anything said, but rather to the failure of the court to define the offenses of insubordination, disloyalty, mutiny, and refusal of duty. As the charge does not appear in the record, we must assume that it covered the law and the facts of the case fully. We find no error in the record.

Judgment is affirmed.